UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSARIO OCHS,

              Plaintiff,                 Case No. 2:16-cv-10309
                                              District Judge Denise Page Hood
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 11) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 10)

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 11), **DENY** Plaintiff's motion for summary judgment (DE 10), and

**AFFIRM** the Commissioner's decision.

**II.     REPORT**

     Plaintiff, Rosario Ochs, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 10), the

Commissioner's memorandum in opposition and cross motion for summary judgment (DE 11), and the administrative record (DE 7).

## A.     Background

Plaintiff filed her application for disability insurance benefits on May 2, 2013, alleging that she had been disabled since September 18, 2009.  (R. at 263-270.)  In a disability report, Plaintiff listed her impairments as psoriatic arthritis,[1] alopecia, chronic pain in her arms and feet, legs spasms and depression.  (R. at 296.)  At the time she filed her application for benefits, Plaintiff was working part-time as an adult foster care provider.  (R. at 296-297.)  Plaintiff's application was denied (R. at 189-192) and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 193-194.)  ALJ Christopher Ambrose held a hearing on August 12, 2014.  (R. at 124-167.)  On August 25, 2014, the ALJ issued an opinion which found Plaintiff to not be disabled.  (R. at 105-119.)  In November 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Ambrose's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

---

[1] Psoriatic arthritis is defined as "a severe form of arthritis accompanied by inflammation, psoriasis of the skin or nails, and a negative test for rheumatoid factor—called also *psoriasis arthropathica*[.]"  http://www.merriam-webster.com/medical/psoriatic%20arthritis (last visited November 23, 2016).

### B.    Plaintiff's Medical History

Unusually, a detailed recitation of Plaintiff's medical record is not necessary to resolve the limited issues before the Court.  Indeed, Plaintiff's motion does not discuss the medical history presented to the ALJ in any detail, nor does the Commissioner's.  Consequently, neither will the Court recite at length Plaintiff's medical history, a significant portion of which relates to diagnosis/treatment of her arthritic condition.  *See, e.g.,* R. at 341-349 (office notes and test results of Sanjeev Prakash, M.D.).

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the August 12, 2014 hearing before the ALJ, Plaintiff reported that she was forty-six years old and five feet tall.  (R. at 129, 150.)[2]  Plaintiff testified that she had worked for K-Mart in various capacities, including as a cashier, beginning in 1999.  (R. at 130-131.)  Plaintiff also worked as a secretary for Peoplelink in 2003.  (R. at 132.)  In addition, Plaintiff had worked for Service Master doing water damage and mold restoration (R. at 133), but she was employed part-time working in an adult foster care program from 2010 through the day before the

---

[2] Plaintiff was not asked her weight at the hearing.  Elsewhere in the record her weight is listed as 157 pounds.  *See, e.g.,* R. at 296.

hearing, doing "[l]ight housework, a little bit of sweeping, light dishes . . . [l]ight dusting, picking up medication . . . picking up errands."  (R. at 133-135.)[3]

Plaintiff's adult foster care work lies at the heart of one of the two issues before the Court, and that work was also repeatedly addressed at the hearing. According to Plaintiff, she makes about $50 per week in the foster care job, at which she works two days per week.  (R. at 134.)  When the ALJ asked Plaintiff if she could work more hours if she wanted to, Plaintiff answered that her work hours are "more than enough for me right now."  (R. at 136.)

Later in the hearing, Plaintiff's foster care work was again addressed.  First, the ALJ asked Plaintiff the following awkwardly worded question:

> Here it says—this is back in August of last year—it says you were working 16 hours a week for the State of Michigan doing adult foster care.  So that's more than one and a half hours for two patients twice a week.  That would only be like six hours[,] so had you been doing it more?

(R. at 146.) Plaintiff nonresponsively answered "[n]o, that's my work."  (*Id.*)  The ALJ then asked Plaintiff if "he" (it is unclear to whom the ALJ was referring) "got that, that's wrong then?[,]" to which Plaintiff responded affirmatively and stated "I believe 16 [presumably hours] is for the month."  (*Id.*).

---

[3] In fact, Jodi Flanders, D.O. noted on March 19, 2015—over seven months after the hearing before the ALJ--that Plaintiff was still working part-time as an adult foster care provider.  (R. at 41.)

Again, after other topics were covered, the ALJ returned to Plaintiff's foster care work.  In response to the ALJ's questions, Plaintiff stated that she drives about thirty minutes each way to work.  (R. at 149.)  Plaintiff then stated that she did some dusting, laundry and wiped down toilets for her clients and she was also able to do similar chores at home.  (R. at 149-150.)

The ALJ addressed other topics and then permitted Plaintiff's attorney to question her.  Eventually, during the course of questioning by her attorney, the ALJ interjected to ask what time Plaintiff left home to go to work, and Plaintiff stated she left between 10:00 a.m. and noon and returned home by 3:00 p.m.  (R. at 155.)

Yet again, after other matters were discussed, the examination of Plaintiff returned to her foster care work.  Specifically, the following colloquy occurred:

Q [By Plaintiff's Attorney] And you have two adults that you take care of?

A  Yes.

Q  Okay.  You've never worked 16 hours a week?

A  No.

ATTY:  Judge, I think Exhibit 3D from the Community Mental Health shows that her income is basically $350 a week.

ALJ:  $350 a week?

ATTY:  $350 a month, I'm sorry, for those two foster cares for the last three years or so.

ALJ:  Well, you know, I think part of the issue with [Dr.] Prakash is it may be electronic record keeping because even back when he first saw her, March 2013, it says 16 hours a week.

ATTY:  Yeah, that's just I think wrong.

ALJ:  I mean she's out of the house about 10 hours a week between 10:00 and 3:00 and then some days she doesn't leave till noon.

CLMT:  Correct.

ALJ:  So, and it's only twice a week, right?

CLMT:  Yes.

ALJ:  Okay.  I've got no reason to dispute what she said.

(R. at 156-157.)

Plaintiff testified that she takes four to six prescription pills a day due to pain stemming from her arthritis.  (R. at 142.)  Plaintiff has stiffness in her hands and swelling in her hands and feet (R. at 142), which lasts for a couple hours in the morning but is more uncomfortable in the evenings.  (R. at 144.)  Plaintiff can walk fifteen to twenty minutes without needing to stop, can sit for a half hour to an hour and can stand in one spot for less than twenty minutes.  (R. at 147.)[4]  Plaintiff estimated she can lift seven to ten pounds.  (R. at 148.)  Plaintiff is able to drive herself to work.  (R. at 149.)  Plaintiff's hands feel better if she elevates her arms over her head.  (R. at 156.)  The condition of Plaintiff's hands and feet has gotten

---

[4] Later on, Plaintiff stated that she could stand a half of an hour to an hour before her feet begin to swell. (R. at 154.)

worse over the years.  (R. at 158.)  When asked by the ALJ if she is still smoking,

Plaintiff responded that she has "cut down, [to] maybe 10, 12 a day."  (R. at 160.)

## 2.    Vocational Expert Testimony

Toni McFarland also testified at the hearing as a Vocational Expert ("VE").

(R. at 161-164.)  The VE classified Plaintiff's previous work at K-Mart as

primarily light and semi-skilled, though her work there as a stocker was semi-

skilled and heavy pursuant to the Dictionary of Occupational Titles ("DOT") but

medium as actually performed. (R. at 161-162.)  Plaintiff's work at Service Master

was classified heavy and semi-skilled, and her work as a secretary was sedentary

and either semi-skilled or skilled.  (R. at 162.)

The ALJ asked the following hypothetical question:

I'd like you to assume an individual [with] the same age, education,
and work experience as the claimant.  I would like you to assume that
she could only work at the light exertional level.  No ladders, ropes, or
scaffolds.  Occasional ramps or stairs, occasional balance, stoop,
kneel, crouch, and crawl.  Could do frequent bilateral handling and
fingering of objects.  Also she would have to avoid concentrated
exposure to excessive vibration.  Could an individual with these
limitations perform claimant['s past work as it was actually
performed or generally performed per the DOT?

(R. at 162-163.)  The VE answered that such a person could still perform

Plaintiff's prior work as a grocery checker, service desk person and secretary.  (R.

at 163.)  The ALJ then asked that "assuming these functions and limitations[,]

would there also be other jobs in the national economy such a person could

perform?" (R. at 163.) The VE responded that such a person could do light, unskilled work as a cashier (542,000 jobs in the national economy), housekeeping cleaner (221,000 jobs in the national economy) and office helper (86,000 jobs in the national economy).[5]

### D.  THE ADMINISTRATIVE DECISION

On August 25, 2014, the ALJ issued his decision. (R. at 105-119.) At Step 1 of the sequential evaluation process,[6] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September

_____

[5] Neither the ALJ nor Plaintiff's then-counsel asked the VE how many of those positions were available in Michigan, nor has Plaintiff raised any related issue in this Court.

[6] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

18, 2009 through her date last insured, June 30, 2014.  (R. at 110.)  At Step 2, the

ALJ found that Plaintiff had the following severe impairments: inflammatory

polyarthritis[7] and obesity.  (R. at 111.)  At Step 3, the ALJ found that Plaintiff did

not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (*Id.*)  Prior to undertaking Step 4, the ALJ evaluated Plaintiff's

residual functional capacity ("RFC")[8] and determined that she had the capacity to

perform light work[9] with the following exceptions:

> the claimant is able to lift up to 20 pounds occasionally and up to 10
> pounds frequently, stand and/or walk up to 6 hours in an 8-hour
> workday and sit up to 6 hours in an 8-hour workday.  She is never to
> climb ladders, ropes or scaffolds, but is able to occasionally climb
> ramps and stairs and balance, stoop, kneel, crouch and crawl.  Lastly,
> she is limited to frequently handle and finger with both hands, but is
> to avoid concentrated exposure to excessive vibration.

---

[7] Polyarthritis is defined as "arthritis involving two or more joints[.]"
http://www.merriam-webster.com/medical/polyarthritis (last visited November 23,
2016).

[8] A claimant's "residual functional capacity" is an assessment of the most he or she
can do in a work setting despite his or her physical or mental limitations. 20
C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.
2002).

[9] Light work "involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds. Even though the weight
lifted may be very little, a job is in this category when it requires a good deal of
walking or standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b).

(R. at 112.)  The ALJ then concluded at Step 4 that Plaintiff could perform her past work as a grocery checker, service desk helper and secretary.  (R. at 117.)  Nonetheless, the ALJ engaged in a Step 5 analysis and concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 118.)  Specifically, the ALJ determined that Plaintiff could work as a cashier, housekeeping cleaner and office helper.  (*Id.*) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.* at 118-119.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Finally, even if the ALJ's decision meets the substantial

evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.  ANALYSIS

In her motion for summary judgment, Plaintiff raises two issues.  First, she asserts that the ALJ committed a reversible error by concluding that she worked sixteen hours per week in the adult foster care program.  (DE 10 at 5-6.)  Second, she contends the Appeals Council erred by failing to consider evidence submitted by her after the ALJ issued his decision.  (*Id.* at 6-10).  The Commissioner opposes Plaintiff's motion, asserting that she is entitled to summary judgment because substantial evidence supports the ALJ's conclusions, and the Appeals Council's refusal to consider the post-hearing evidence does not entitle Plaintiff to relief.  I agree with the Commissioner.

### 1.  The Hours Worked Per Week

Within the ALJ's discussion of Plaintiff's RFC is a statement that "[m]edical records show that she [Plaintiff] works 16 hours per week as an adult foster care aide."  (R. at 115.)  Plaintiff contends the ALJ's statement that she worked sixteen hours per week "is without any, let alone substantial, evidence to support it."  (DE 10 at 6.)  Plaintiff then asserts that alleged error is not harmless because "this ALJ

may have reached a different conclusion had the accurate information been considered. Remand is required." (*Id.*)

First, as the Commissioner correctly notes in her response, there is substantial evidence to support the ALJ's statement that Plaintiff worked sixteen hours per week.  In fact, the record contains *many such references*.  For example, Dr. Prakash's notes of Plaintiff's January 28, 2014 office visit show Plaintiff as working "16 hours a week for [the] state of Michigan doing adult foster care . . . ." (R. at 464.)  Similar statements are found in Dr. Prakashs's notes of Plaintiff's October 22, 2013 examination (R. at 453); October 4, 2012 examination (R. at 381); and March 7, 2013 examination.  (R. at 342.)

To be sure, there is also evidence indicating that Plaintiff worked fewer hours per week.  For example, a May 2013 work activity report states that Plaintiff works twelve hours per month.  (R. at 290.)  Also, in May 2013 Plaintiff completed a form detailing her work history and therein wrote that she works three hours per day, two days per week at the adult foster care job.  (R. at 307.)  As previously discussed, Plaintiff also testified at the hearing that Dr. Prakash's notes do not accurately reflect the hours per week she works, and the ALJ stated that he had "no reason to dispute" Plaintiff on that matter.  (R. at 157.)

It is unclear why the ALJ seemed to change courses from orally accepting Plaintiff's statement of her work schedule at the hearing to rejecting that statement

in his written opinion.[10]  However, this Court's function is not to analyze why the ALJ reached his conclusion about Plaintiff's work schedule.  Instead, the Court's function is to determine if the ALJ's decision is supported by substantial evidence.  *See, e.g., Crum v. Sullivan*, 921 F. 2d 642, 644 (6th Cir. 1990) ("The court must affirm the Secretary's decision if supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.  Credibility is weighed by the Secretary. Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.") (quotation marks and citations omitted).  It is theoretically possible Dr. Prakash's notes regarding Plaintiff's work schedule are simply incorrect.  However, the notes are in the record and are a facially permissible basis for the ALJ's statement about Plaintiff's work.

Moreover, the fact that the medical records *repeatedly* refer to Plaintiff working 16 hours per week makes it less likely that the doctor made an inadvertent

---

[10] Indeed, the ALJ was cognizant of Plaintiff's testimony regarding her work schedule when he wrote his opinion because he related that testimony in the opinion.  (R. at 113) ("At the hearing, the claimant testified that she currently works as an adult foster care worker two days a week and makes approximately $50 per week.   She spends an hour and a half with each client and she has two clients.").

mistake.  Indeed, a November 2013 statement of Plaintiff's gross earnings does not support her contention that she works only about six hours per week and earns about $50 per week; to the contrary, that statement shows that she worked about ten hours per week in 2012 and 2013 and earned about $350 per month. (R. at 284.)[11]  In her reply brief, Plaintiff relies upon a work activity report she completed in May 2013 which shows that her net income in 2011 was just under $200 per month and was just over $200 per month in 2012.  (R. at 287.)   Because one deals with net income and another with gross income, the two earnings statements are not entirely capable of an easy, side-by-side comparison.  However, the two statements help make the important, larger point that there was a plethora of often confusing, contradictory evidence about Plaintiff's work schedule.  Consequently, the ALJ did not err by crediting the evidence showing that Plaintiff worked about 16 hours per week. In addition, Plaintiff apparently did not take advantage of any opportunities during her visits with Dr. Prakash to clarify the amount of hours per week she works.

---

[11] The November 2013 statement shows that Plaintiff earned just over $350 per month from February 2012 through November 2013, with the exception of one month when she earned a bit over $367.  (R. at 284.)  Plaintiff reported that she made $8.50 per hour.  (R. at 307.)  $350 / $8.50 = *41.18 hours worked per month*, or roughly ten hours per week.  That salary evidence also does not support Plaintiff's testimony that she earned only about $50 per week. The ALJ remarked on the salary evidence in his opinion, noting that Plaintiff earned "approximately $1,052 per quarter from 2011 through present." (R. at 110.)

Furthermore, even if the Court were to assume (solely for purposes of argument) that the ALJ erred in relating the number of hours per week Plaintiff works, such an error would be harmless because the amount of work Plaintiff performs was only a portion of the ALJ's overall RFC assessment.  The ALJ also specifically relied upon: (1) the type of tasks Plaintiff was able to perform for her clients and in her activities of daily living; (2) her "essentially routine and conservative" medical treatment; (3) the fact that no physician had assessed greater limitations upon Plaintiff than those imposed by the ALJ; and, (4) Plaintiff's failure to comply with advice to stop smoking.  (R. at 116.)  Plaintiff has not alleged or shown error in any of those additional reasons for the ALJ's RFC assessment.  The ALJ's RFC determination, therefore, is supported by substantial evidence and should not be disturbed.

### 2.  The Appeals Council's Treatment of Additional Evidence

Plaintiff submitted about eighty additional pages of medical records to the Appeals Council.  (R. at 10-92).  The Appeals Council stated that it looked at those records but they did not entitle Plaintiff to relief because they were "about a later time" and thus did "not affect the decision about whether you were disabled beginning on or before August 25, 2014."  (R. at 2.)[12]  Plaintiff contends the

---

[12] *See* 20 C.F.R. §404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The

Appeals Council's treatment of those new records was error as a matter of law because "[t]he submitted evidence clearly relates to the period of time prior to the Administrative Law Judge's decision and during the date of onset."  (DE 10 at 8.)

As a prefatory matter, the Court notes that there is inarguably a factual error in the Appeals' Council's decision.  The ALJ determined whether Plaintiff was disabled as of her date of last insured—which was *June* 30, 2014, not *August* 30, 2014, as cited by the Appeals Council.  However, that minor error, in and of itself, is harmless because it does not affect the propriety of the Appeals Council's overall treatment of the new records.

The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster*, 279 F.3d at 357.  In other words, "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).   Accordingly, despite Plaintiff's argument to the contrary, this Court

---

Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.").

cannot consider the post-hearing evidence as part of its determination of whether the ALJ's decision should be affirmed.

Instead, "[t]he district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* Such a remand is called a "sentence six" remand because it is made pursuant to sentence six of 42 U.S.C. §405(g).[13] Plaintiff, as the party seeking relief, bears the burden to show that a remand is appropriate. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Evidence is deemed new "only if it was not in existence or available to the claimant at the time of the administrative proceeding . . . ." *Id.* at 484 (quotation marks and citation omitted). Evidence is deemed material "if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quotation marks and citation omitted).

---

[13] Sentence six of 42 U.S.C. 405(g) provides in relevant part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

Plaintiff merely asserts the Appeals Council committed an error of law and does not explicitly discuss the requirements of, and her alleged entitlement to, a sentence six remand.  Plaintiff's failure to make a proper, fully developed sentence six remand argument could be deemed fatal to whether she should receive such a remand.  *See, e.g., Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.") (quotation marks and citations omitted).

Nonetheless, the Court leniently will examine the records briefly to determine whether a sentence six remand is appropriate.  In the course of that evaluation, for simplicity and expediency's respective sakes, the Court will indulgently presume that the post-hearing evidence may properly be deemed "new."  Nonetheless, Plaintiff is not entitled to relief because the evidence is not "material."

The post-hearing materials are medical records discussing, among other things, Plaintiff being diagnosed with celiac disease.  For example, the notes of an esophagogastroduodenoscopy performed by Lisa LePain, D.O., on Plaintiff on April 10, 2015 reflect results "suggestive of celiac disease."  (R. at 32.)   However,

Plaintiff's seeming belief to the contrary notwithstanding, the mere diagnosis of a condition or impairment—or in this case finding that the results were "suggestive" of one –does not automatically denote whether that condition/impairment is severe enough to be disabling. *See, e.g., Bruner v. Comm'r of Soc. Sec.*, 2016 WL 6080214, at *10 (E.D. Mich. Feb. 18, 2016) (Davis, M.J.) ("Plaintiff asserts that this diagnosis, either alone or in combination with her other severe impairments, should have resulted in a finding of disability. However, this Circuit has made clear that the mere fact that a plaintiff suffers from certain conditions or carries certain diagnoses does not necessarily equate to disability or a particular RFC. Rather, a claimant must also prove its severity and functional impact."), *report and recommendation adopted at* 2016 WL 1056086 (E.D. Mich. Mar. 17, 2016) (Steeh, J.).  Also, crucially, Plaintiff must show that she was disabled as of June 30, 2014—her date last insured.  Evidence regarding a later time period—such as the "new" evidence at issue—is only "minimally probative" and "is only considered to the extent it illuminates claimant's health before the expiration of insured status." *Nork v. Comm'r of Soc. Sec.*, 2015 WL 3620482, at *6 (E.D. Mich. June 9, 2015) (Binder, M.J.), *report and recommendation adopted at* *1-4 of that same citation (Edmunds, J.).  "In other words, regardless of the seriousness of [her] present disability, Plaintiff must prove that [s]he was disabled between [September 18,

2009], [her] alleged onset date, and [June 30, 2014], when [her] insured status for purposes of receiving DIB expired." *Id.* at *6.

Plaintiff has failed to meet her burden to show that there is a reasonable probability that the new evidence, including the discussion therein of her celiac condition, would have led to a finding that she was disabled prior to June 30, 2014. Plaintiff has not shown how the new evidence illuminates her condition prior to her date last insured. To the contrary, at least some portions of the new evidence support the ALJ's decision. For example, on March 19, 2015, Plaintiff told Jodi Flanders, D.O., that she was still working part-time and described her health as "good." (R. at 41.) Similarly, on April 2, 2015, Plaintiff was examined by Maria Reed, P.A., and was "[h]ealthy appearing" and had "[n]o acute distress." (R. at 24.) Later in April 2015, Josh June, D.O., examined Plaintiff and found that she had no joint laxity, normal range of motion in her upper and lower extremities, no muscle weakness and had normal transition movements. (R. at 12.) Plaintiff also continued to smoke, despite being strongly counseled that smoking affected her bowel and autoimmune issues. (R. at 13.)[14] On the other hand, Plaintiff merely, in

---

[14] *See, e.g., Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) ("Again, however, we can take judicial notice of the massive body of medical opinion supporting the advice the claimant received from his doctor on the subject of cigarette smoking. The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege—but if he

conclusory fashion, asserts that "[t]he submitted evidence clearly relates to the period of time prior to the Administrative Law Judge's decision and during the date of onset[,]" (DE 10 at 8), without going through the process of tracing that new evidence sufficiently to her condition prior to her date last insured, and without explaining—with appropriate record support—how this alleged impairment is severe enough to be disabling.  In short, since Plaintiff has not shown that there is a reasonable probability the new evidence would have entitled her to benefits, the evidence is not material.  Because the post-hearing evidence is not material, a sentence six remand is unwarranted.

### G.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 10), **GRANT** Defendant's motion for summary judgment (DE 11), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

---

is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.") (footnote and paragraph break omitted).

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 8, 2016                  s/Anthony P. Patti
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

23

I hereby certify that a copy of the foregoing document was sent to parties of record on December 8, 2016, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti